IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OMAR LIONEL REED,            )
                             )
             Plaintiff,      )
                             )
      v.                     )        1:12-CV-456
                             )
SHEP JONES, et al.,          )
                             )
             Defendants.     )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Omar Reed, has sued a number of state and county correctional employees alleging various violations of his constitutional rights arising out of an August 2010 incident at the Scotland County Detention Center. He claims that Scotland County detention officers tased and pepper-sprayed him in the holding cell where he was temporarily housed and that transporting North Carolina Department of Correction ("DOC") officers thereafter refused to provide him with medical care until he was returned to his prison unit some four hours away.

Each of the Scotland County and some of the DOC defendants have moved for summary judgment. (Docs. 59, 74.) The Court will grant the defendants' motions except as to Mr. Reed's deliberate indifference claims against certain DOC defendants.

## FACTS

The facts are presented in the light most favorable to Mr. Reed, the non-moving party. The defendants have presented substantial evidence contradicting Mr. Reed's

version of events, but, at summary judgment, the Court is prohibited from resolving disputed questions of fact against the non-moving party. *See, e.g.*, *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015).

In August 2010, Mr. Reed was a "high security maximum control" inmate at Polk Correctional Institution. (Doc. 87-1[1] at ¶ 3; Doc. 88-1 at ¶ 3.) On August 10, North Carolina Department of Correction ("DOC") Officers Evans, Thrower, and Carter transported Mr. Reed to the Scotland County Courthouse to face felony charges for an assault on Scotland County detention officers. (*See* Doc. 18 at 8, 10; Doc. 60-5 at ¶ 4.) Correctional Case Manager Totten followed the transporting DOC officers in a "chase vehicle." (*See* Doc. 74-3 at ¶¶ 1-4; *see also* Doc. 18 at 8.)

After Mr. Reed appeared in court, the DOC officers brought him to the Scotland County Detention Center and asked detention officers there to temporarily keep Mr. Reed in a holding cell while they went to lunch. (*See* Doc. 18 at 8-9; Doc. 60-4 at ¶¶ 3-5.) Sergeant Miller, the shift sergeant on duty, agreed and placed Mr. Reed in a holding cell in "full restraints"—two sets of handcuffs and two sets of ankle shackles. (Doc. 18 at 9; Doc. 60-4 at ¶¶ 2-5.) The holding cell was empty except for a toilet, a table, and a broken shower stall. (Doc. 87-1 at ¶ 9.)

The detention officers gave Mr. Reed two lunches packaged in Styrofoam boxes to eat in the holding cell. (Doc. 18 at 9; Doc. 60-4 at ¶ 5; Doc. 60-5 at ¶ 6.) Mr. Reed found hair in his food and requested another lunch from a detention officer. (Doc. 18 at 9.)

---

[1] All references are to the docket number and page numbers appended by the CM-ECF system.

That officer was "hostile" towards Mr. Reed, (*see* Doc. 18 at 9; Doc. 87-1 at ¶ 8), and Mr. Reed disposed of both lunches in the toilet. (*See* Doc. 18 at 10; Doc. 87-1 at ¶ 9.) After Mr. Reed flushed the toilet, it overflowed. (Doc. 18 at 10; Doc. 87-1 at ¶¶ 9-10.)

Officer Jackson issued a radio call that Mr. Reed "was being disorderly and was flooding out the holding cell." (Doc. 60-4 at ¶ 6; Doc. 60-5 at ¶ 7; Doc. 60-6 at ¶ 6; *see also* Doc. 60-4 at 10.) Sergeant Miller and Officers Hutchinson, Jackson, and Williams responded to the call, and Sergeant Miller began screaming obscenities at Mr. Reed. (Doc. 18 at 10; Doc. 87-1 at ¶ 11.)

Without warning, Sergeant Miller "tased" Mr. Reed in the stomach through the holding cell bars, which caused Mr. Reed to fall to the floor in pain. (Doc. 18 at 11; Doc. 87-1 at ¶ 11.) She tased Mr. Reed a second time, (Doc. 18 at 12; Doc. 87-1 at ¶¶ 12-13), and then pepper-sprayed him in the face from "close range."[2] (Doc. 18 at 12; Doc. 87-1 at ¶ 14.) Mr. Reed lost consciousness. (Doc. 18 at 12; Doc. 87-1 at ¶ 14.)

Mr. Reed regained consciousness when DOC Officers Evans, Thrower, and Carter and Correctional Case Manager Totten returned from lunch and entered the holding cell area. (Doc. 18 at 12; Doc. 88-1 at ¶ 8; *see also* Doc. 60-4 at ¶ 14; Doc. 60-5 at ¶ 15; Doc. 60-6 at ¶ 13.) Sergeant Miller told the DOC officers that Mr. Reed had been pepper sprayed. (Doc. 60-4 at ¶ 14; *see also* Doc. 60-5 at ¶ 15; Doc. 60-6 at ¶ 13.) Mr. Reed then asked the DOC officers to decontaminate him or allow him to be seen by medical

---

[2] In his brief and affidavits, Mr. Reed uses the terms "pepper spray," "chemical mace," and "mace" interchangeably. (*See, e.g.*, Doc. 18 at 12; Doc. 87-1 at ¶¶ 14, 21; Doc. 88-1 at ¶¶ 8, 14.) The Court has used the term "pepper spray" in analyzing Mr. Reed's claims.

staff.  (Doc. 18 at 12-13; Doc. 87-1 at ¶ 19; Doc. 88-1 at ¶ 12.)  The DOC officers

ignored Mr. Reed's request, entered the holding cell and took control of him, and

escorted him to the transportation vehicle.  (*See* Doc. 18 at 13; Doc. 60-4 at ¶ 14; Doc.

60-5 at ¶ 15; Doc. 60-6 at ¶ 13.)

When they reached the transportation vehicle, the DOC officers contacted

defendant Reid, the Assistant Superintendent at Polk, to notify him that force was used on

Mr. Reed.  (Doc. 18 at 13; Doc. 88-1 at ¶ 13; *see also* Doc. 74-4 at ¶¶ 1, 3-4; Doc. 60-4 at

10-11.)  Mr. Reed was then transported back to Polk without receiving medical attention.

(Doc. 18 at 13; Doc. 88-1 at ¶¶ 12-13.)  During the four-hour drive back to Polk, Mr.

Reed experienced complications with his chronic asthma, chest pains, burning and

blindness, and "extreme breathing problems," including coughing, gagging, and choking.

(Doc. 18 at 13; Doc. 87-1 at ¶ 20; Doc. 88-1 at ¶¶ 13-14.)  He continued to request

medical attention, but the DOC officers ignored his requests.  (Doc. 88-1 at ¶ 12.)

A nurse evaluated Mr. Reed upon his return to Polk.  (*See* Doc. 60-9 at ¶ 3; Doc.

87-1 at ¶ 21; Doc. 88-1 at ¶ 14.)  The nurse asked Mr. Reed what happened at the

Detention Center, and he responded, "I'm good, I was pepper sprayed and a stun gun was

used on my right arm at the jail today."  (Doc. 60-9 at ¶ 3; Doc. 60-9 at 4; Doc. 60-10 at

5.)  Mr. Reed's vital signs were "essentially normal," and, other than redness in his right

eye, the nurse observed no reddening, open wounds, or bruises on Mr. Reed.  (Doc. 60-9

at ¶ 3; Doc. 60-9 at 4; Doc. 60-10 at 5.)  Mr. Reed denied having any injuries, (*see* Doc.

60-9 at ¶ 3; Doc. 60-9 at 4), and "almost totally disregarded even talking to the nurse"

because he was "exhausted and in a hurry to get in the shower [and] remove the [pepper

4

spray] from [his] eyes [and] skin." (Doc. 87-1 at ¶ 21; *see also* Doc. 88-1 at ¶ 14.) The nurse recommended that Mr. Reed "be decontaminated ASAP" from the effects of the pepper spray. (Doc. 60-9 at 4; Doc. 60-10 at 5.)

The next morning, August 11, another nurse at Polk evaluated Mr. Reed. (*See* Doc. 60-10 at ¶ 4; Doc. 60-9 at 5; Doc. 60-10 at 6.) According to his prison medical records, Mr. Reed denied any discomfort and stated that being tased "didn't hurt, not really sure they hit me." (Doc. 60-9 at 5; Doc. 60-10 at 6.) Mr. Reed also told the nurse that the detention officers "tried to hit [him] twice, but only got [him] once in [his right arm]" and that he was "fine." (Doc. 60-9 at 5; Doc. 60-10 at 6.) The nurse observed that, other than the redness in his right eye, Mr. Reed had no injuries, such as redness, bruising, or Taser "contact points." (Doc. 60-9 at 5; Doc. 60-10 at 6.)

Mr. Reed testifies that he continues to experience medical problems from the August 10 incident, including damage to his right eye, blurred and cloudy vision, back pain, and psychological trauma that requires medication. (*See* Doc. 87-1 at ¶¶ 23-25; Doc. 88-1 at ¶ 16.)

## ANALYSIS

Mr. Reed has sued a number of Scotland County detention officers. As best the Court can tell, Mr. Reed asserts an excessive force claim against Sergeant Miller, (Doc. 18 at 15), bystander liability claims against Officers Hutchinson, Jackson, and Williams, (Doc. 18 at 14), due process claims against Sergeant Miller and Officers Hutchinson, Jackson, and Williams, (Doc. 18 at 16), and supervisory liability claims against Scotland County Sheriff Jones and Chief Deputy Johnson. (Doc. 18 at 14; *see also* Doc. 60-2 at

¶ 2; Doc. 60-3 at ¶ 2.)  He has also sued a number of DOC officers and officials.  As best the Court can tell, Mr. Reed asserts claims for failure to prevent harm and deliberate indifference to medical needs against Assistant Superintendent Reid, Officers Evans, Thrower, and Carter, and Correctional Case Manager Totten, (Doc. 18 at 14), and a supervisory liability claim against Assistant Superintendent Reid.  (Doc. 18 at 14.)

The defendants have moved for summary judgment, contending that Mr. Reed's claims are without merit or, alternatively, that they are entitled to qualified immunity. (*See generally* Docs. 59, 60, 74, 75, 93.)  The Scotland County defendants also contend that Mr. Reed's claims are barred because he failed to exhaust administrative remedies against them.  (Doc. 93 at 7-10.)

A.  The Scotland County Defendants

The Scotland County defendants contend that Mr. Reed's claims against them are barred by the Prison Litigation Reform Act of 1995 ("PLRA") because he failed to exhaust his administrative remedies.[3]  (*See* Doc. 93 at 7-10.)  In support, they rely on Sergeant Miller's supplemental affidavit, in which she testifies that "[t]here is no record of [Mr.] Reed ever filing" any grievance, and an attached copy of the Scotland County

---

[3] The Scotland County defendants did not raise the exhaustion defense in their brief in support of summary judgment, (*see generally* Doc. 60), and "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."  *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).  "[T]he power to decline consideration of such arguments is discretionary . . . ."  *Id.*  The Court allowed Mr. Reed to file a surreply brief addressing the exhaustion defense, (*see* Doc. 97; *see also* Docs. 95, 98), and the Court finds it appropriate to consider the issue at summary judgment.

Detention Center's "Inmate Grievance System" policy. (*See* Doc. 93-1 at ¶¶ 3-4; Doc. 93-1 at 5-6; *see also* Doc. 93 at 10.)

The Court granted Mr. Reed leave to file a surreply brief and additional evidence related to the exhaustion issue. (*See* Docs. 95, 97, 98); *supra* note 2. In his surreply, Mr. Reed does not seriously dispute that he failed to exhaust administrative remedies against the Scotland County defendants.[4] (*See* Doc. 98 at 1-3.)

The PLRA "requires a prisoner to properly exhaust available administrative remedies prior to filing an action challenging the conditions of his confinement." *Hill v. Haynes*, 380 F. App'x 268, 269 (4th Cir. 2010) (per curiam) (citing 42 U.S.C. § 1997e(a) and *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005).

Before granting summary judgment on exhaustion grounds, the Court "is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Hill*, 380 F. App'x at 269-70 (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). This is so because an administrative

---

[4] To the extent Mr. Reed contends that he exhausted administrative remedies against the Scotland County defendants by submitting "Grievance # 3980-10-0006," (*see* Doc. 98 at 2; *see also* Doc. 18 at 1-2), that argument is rejected. Mr. Reed submitted that grievance only to the North Carolina Department of Corrections and not to the Scotland County Detention Center. (*See* Doc. 1 at 13-14, 20-22.)

remedy is considered unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it."[5] *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Mr. Reed contends that his administrative remedies were "unavailable" as to these defendants because he is a pro se prisoner in solitary confinement with "no way of obtaining a grievance form" and because the Scotland County Sheriff and other Detention Center staff members did not respond to several letters about the August 2010 incident. (*See* Doc. 98 at 2; *see also* Doc. 1 at 11-12, 24-26.)

Mr. Reed has introduced no evidence that Detention Center officials or anyone else prevented him from availing himself of the Detention Center's grievance system. The record reflects that Mr. Reed sent letters to Sheriff Jones, Officer Johnson, and Captain Howell in which he requested only incident reports, names, and officer-duty assignments related to the August 2010 incident. (*See* Doc. 1 at 24-26.) In each letter, Mr. Reed specifically stated that he was "requesting this information for possible legal action and for no other reason." (*See* Doc. 1 at 24-26.) Mr. Reed made no mention of the grievance system, did not ask the Sheriff to investigate the incident, and did not request a grievance form. (*See* Doc. 1 at 24-26.) These letters do not show that Detention Center officials prevented him from exhausting administrative remedies by failing to respond.

---

[5] The exception to the PLRA's exhaustion requirement set forth in *Blake v. Ross*, 787 F.3d 693, 698 (4th Cir. 2015) does not apply here because, as discussed *infra*, Mr. Reed made no reasonable attempt to avail himself of the grievance system at issue. *See id.* ("The procedural prong ensures that an uncounseled inmate attempting to navigate the grievance system will not be penalized for making a reasonable, albeit flawed, attempt to comply with the relevant administrative procedures.").

*See Hill*, 380 F. App'x at 273-74 (reversing the district court's dismissal on exhaustion grounds where a prisoner claimed that he requested, but was denied, grievance forms); *see also Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004) (per curiam); *Hendricks v. Barnes*, No. 1:06CV799, 2007 WL 2257565, at *4 & n.6 (M.D.N.C. Aug. 3, 2007) (adopting recommendation of Dixon, M.J.).

Mr. Reed's argument that he could not file a grievance because he is in solitary confinement and proceeding pro se lacks merit. Despite being pro se and in solitary confinement, Mr. Reed submitted a grievance to the North Carolina Department of Corrections related to the August 2010 incident, (*see* Doc. 1 at 13-14, 20-22), sent a host of letters to legal entities and involved parties, (*see* Doc. 1 at 15-19, 23-30), and filed numerous motions and briefs in this case. (*See* Docs. 2, 3, 6, 9, 45, 48, 64, 65, 68-72, 78, 82, 84, 85, 87, 88, 95, 98.) It is clear that Mr. Reed's "inability" to obtain a grievance form is attributable to the fact that he never requested or made other efforts to obtain a form and not to his custody or pro se status. *Cf. Turrietta v. Barreras*, 91 F. App'x 640, 642 (10th Cir. 2004); *Rogers v. Shoaf*, Nos. 1:07CV326, 1:07CV327, 2010 WL 2629519, at *7 (M.D.N.C. June 28, 2010) (opinion of Auld, M.J.).

Because Mr. Reed failed to exhaust his available administrative remedies against the Scotland County defendants, the Court will grant these defendants' motion for summary judgment on exhaustion grounds. (Doc. 59.) The Court will dismiss all of Mr. Reed's claims against these defendants without prejudice. *See Eisenhauer v. Cooper*, No. 5:12-CV-459-D, 2013 WL 6058200, at *2 (E.D.N.C. Nov. 15, 2013).

9

In the alternative, Mr. Reed has failed to establish disputed questions of material fact as to the due process claims against all of the Scotland County defendants and the supervisory liability claims against Scotland County Sheriff Jones and Chief Deputy Johnson. The Court has not examined Mr. Reed's remaining claims against the Scotland County defendants on the merits.

## B. The DOC Defendants

DOC defendants Thrower, Totten, and Reid moved for summary judgment and filed a brief and various exhibits and affidavits in support. (*See* Docs. 74, 74-1 to 74-4, 75.) In response to the moving defendants' motion, Mr. Reed relies on the sworn testimony in his verified amended complaint,[6] (Doc. 18), affidavits that he attached to his response briefs, (Docs. 87-1, 88-1), and two other exhibits. (Docs. 88-2, 88-3.) The defendants did not file a reply brief or otherwise address the sworn testimony and exhibits that Mr. Reed proffered in opposition to summary judgment.

### 1. Officers Evans and Carter

The record reflects that Mr. Reed did not properly serve Officers Evans and Carter despite several extensions of time to do so. (*See* Doc. 19 at 15-16, 21-22; Docs. 37, 38; *see also* Docs. 4, 8, 17.) More than 18 months have passed since their summonses were

---

[6] The Court has not considered the statements in Mr. Reed's original complaint. (*See* Doc. 1.) "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citation and internal quotation marks omitted); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (holding that an original verified complaint that was not specifically referred to or adopted in a later amended complaint was superseded and of no legal effect at summary judgment); 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1476 (3d ed. 2010) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").

returned unexecuted, (*see* Docs. 37, 38), and Mr. Reed has taken no action since then to attempt to effectuate proper service. Absent proper service, the Court does not have personal jurisdiction over Officers Evans and Carter, and dismissal without prejudice of all claims against these defendants is appropriate. *See Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998); *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012); *see also* Fed. R. Civ. P. 4(m).[7]

2. Eighth Amendment claims against Officer Thrower and Correctional Case Manager Totten

Mr. Reed asserts Eighth Amendment claims against Officer Thrower and Correctional Case Manager Totten. (*See* Doc. 18 at 14-15; *see also* Doc. 88 at 8-14.) As best the Court can tell, Mr. Reed contends that these defendants: (1) failed to prevent the harm caused by Sergeant Miller's use of the Tasers and pepper spray; and (2) demonstrated deliberate indifference to his medical needs when they refused to decontaminate him or provide him with medical treatment before and during the drive back to Polk. (*See* Doc. 18 at 14-15; Doc. 88 at 8-14.)

a. Failure to Prevent Harm

The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain" at the hands of prison officials, *Whitley v. Albers*, 475 U.S. 312, 327 (1986), and "also imposes duties on these officials . . . [to] provide humane conditions of

---

[7] The Court granted Mr. Reed two extensions to serve these defendants, (*see* Docs. 8, 17), and advised him that failure to serve a defendant would result in dismissal. (*See* Doc. 4 at 4.)

confinement."[8] *Makdessi v. Fields*, ___ F.3d ___, ___, 2015 WL 1062747, at \*4 (4th Cir.
Mar. 12, 2015); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials
are, therefore, obligated to take reasonable measures to guarantee inmate safety."
*Makdessi*, 2015 WL 1062747, at \*5.

To establish an Eighth Amendment violation in the failure to prevent harm
context, a plaintiff must show two things. *See id.* First, he must show that he was
"incarcerated under conditions posing a substantial risk of serious harm." *See id.* (citing
*Farmer*, 511 U.S. at 834); *see also Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir.
2014) (noting that the first element of the failure to prevent harm test is met where the
plaintiff establishes that he suffered a "significant" injury). Second, he must show that a
prison official violated his constitutional rights with a "sufficiently culpable state of
mind." *Makdessi*, 2015 WL 1062747, at \*5 (citing *Farmer*, 511 U.S. at 834).

The subjective standard of a "sufficiently culpable state of mind" is one of
"deliberate indifference to inmate health or safety," *Danser*, 772 F.3d at 346-47 (quoting
*Farmer*, 511 U.S. at 834), that is, that a "prison official 'kn[ew] of and disregard[ed] an
excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). The
prison "official 'must both be aware of facts from which the inference could be drawn

---

[8] On the date of the incident, Mr. Reed was at the Scotland County Detention Center to face
felony assault charges, but the undisputed record reflects that he was a convicted prisoner in the
custody of the State of North Carolina. (*See* Doc. 18 at 8, 10; Doc. 60-5 at ¶ 4; Doc. 87-1 at ¶ 3;
Doc. 88-1 at ¶ 3.) Thus Mr. Reed's claims related to the incident arise under the Eighth
Amendment rather than the Fourteenth Amendment. *See, e.g.*, *Kingsley v. Hendrickson*, ___ S.
Ct. ___, ___, 2015 WL 2473447, at \*8-9 (U.S. June 22, 2015); *Patten v. Nichols*, 274 F.3d 829,
834 (4th Cir. 2001).

that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

The undisputed evidence shows that Officer Thrower and Correctional Case Manager Totten were not present when Scotland County Detention Officers tased and pepper-sprayed Mr. Reed. (*See, e.g.*, Doc. 18 at ¶¶ 17-18, 29; Doc. 88-1 at ¶¶ 7-10; Doc. 60-5 at ¶ 15.) Mr. Reed has proffered no evidence that his temporary incarceration at the Detention Center was "under conditions posing a substantial risk of serious harm" or that Officer Thrower or Correctional Case Manager Totten were aware of and disregarded that risk. (*See generally* Docs. 18, 87-1, 88-1.) In his verified amended complaint and affidavits, he offers no direct or circumstantial evidence that suggests the defendants should have known that the Scotland County detention officers would tase, pepper spray, or otherwise assault him without cause. *See Farmer*, 511 U.S. at 842-44; *Danser*, 772 F.3d at 348-49. His speculative and conclusory assertions to the contrary are insufficient to raise a disputed issue of material fact. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). The Court will grant the defendants' motion as to this claim. (*See* Doc. 74.) Accordingly, the Court need not reach the defendants' qualified immunity argument on this issue. (*See* Doc. 75 at 11-12.)

b. Deliberate Indifference to Medical Needs

To establish an Eighth Amendment violation for deliberate indifference to medical needs, Mr. Reed must show that the defendants acted with "deliberate indifference" (subjective component) to his "serious medical needs" (objective component). *Iko v.*

*Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

As to the objective component, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). The subjective component of deliberate indifference in the medical needs context has "two aspects. It must be shown that the officer had '*actual knowledge of the risk of harm to the inmate*' and that the officer must have 'recognized that *his actions were insufficient* to mitigate the risk of harm.'" *Germain v. Shearin*, 570 F. App'x 324, 325 (4th Cir. 2014) (per curiam) (quoting *Iko*, 535 F.3d at 241), *cert. denied*, 135 S. Ct. 193 (2014). Although "[a]n inadvertent failure to provide adequate medical care" or "mere negligence" does not satisfy this standard, deliberate "indifference can be displayed . . . through the response of . . . institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment." *Abraham v. McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (per curiam) (citing *Estelle*, 429 U.S. at 105-06).

Viewing the facts in the light most favorable to Mr. Reed, the record reflects that the defendants denied his continuous requests for medical treatment and decontamination despite obvious injuries caused by pepper spray. In his affidavit, Mr. Reed testifies that the holding cell's shower stall was broken such that he could not decontaminate himself from the pepper spray. (*See* Doc. 87-1 at ¶¶ 9, 12.) He denies under oath that he was seen by a nurse and that he refused medical treatment before leaving the Detention

14

Center.  (*See* Doc. 87-1 at ¶¶ 17, 19; Doc. 88-1 at ¶¶ 9, 12, 15.)  He also affirms that he asked for medical treatment and decontamination several times before and during the four-hour drive back to Polk and that the defendants ignored his requests and injuries. (*See* Doc. 18 at 12-13; Doc. 87-1 at ¶ 19; Doc. 88-1 at ¶ 12.)

Mr. Reed testifies that, during the drive, he suffered complications from his chronic asthma, chest pains, burning, blindness, and breathing problems, including coughing, wheezing, gagging, and choking, (*see* Doc. 18 at 13; Doc. 87-1 at ¶ 20; Doc. 88-1 at ¶ 14), and that, when he got back to Polk, he "rushed" and "almost totally disregarded" his medical evaluation with a nurse so that he could be decontaminated. (*See* Doc. 87-1 at ¶ 21; Doc. 88-1 at ¶ 14.)  Mr. Reed testifies that he continues to suffer physically and mentally as a result of the August 2010 incident.  (Doc. 87-1 at ¶¶ 23-25; Doc. 88-1 at ¶ 16.)

These facts, if believed, are sufficient to establish that the defendants were deliberately indifferent to Mr. Reed's medical needs.  *See Iko*, 535 F.3d at 241-42; *Mann v. Failey*, 578 F. App'x 267, 274 (4th Cir. 2014) (per curiam) (holding that an inmate's sworn testimony concerning correctional officers' refusal to allow him to decontaminate after being pepper-sprayed precluded summary judgment); *Williams v. Benjamin*, 77 F.3d 756, 761, 764-68 (4th Cir. 1996) (holding, in the excessive force context, that an inmate's sworn testimony concerning correctional officers' refusal to allow him to wash or receive medical attention after being "maced" precluded summary judgment).

In their brief, the defendants make arguments relying almost exclusively on the versions of the facts provided in the Scotland County and DOC defendants' affidavits,

15

which are quite different from Mr. Reed's version and which suggest that Mr. Reed was combative and aggressive, refused their orders to decontaminate himself in the properly functioning shower stall, and was violent and spitting such that the Detention Center nurse could not evaluate or decontaminate him.[9] (*See* Doc. 75 at 9-10; *see also* Doc. 60-4 at ¶¶ 7-15; Doc. 60-5 at ¶¶ 8-16; Doc. 60-6 at ¶¶ 7-14; Doc. 93-1 at ¶ 2; Doc. 93-1 at 4.) These arguments ignore the sworn testimony in Mr. Reed's amended verified complaint and affidavits,[10] which the Court is obligated to accept as true at the summary judgment stage. *See, e.g.*, *Smith v. Ray*, 781 F.3d 95, 98, 106 (4th Cir. 2015); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (collecting cases); *see also Mann*, 578 F. App'x at 272

---

[9] The record does not contain a video of any part of the incident giving rise to Mr. Reed's Eighth Amendment claims, and the defendants make no specific argument that the Court should not consider Mr. Reed's version of events for purposes of summary judgment. (*See* Doc. 75 at 6-7, 9-10); *see also Scott v. Harris*, 550 U.S. 372, 378-80 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In any event, the reliability of the documentary evidence in the record, (*see* Doc. 60-4 at 10-11; Doc. 60-9 at 4-5; Doc. 60-10 at 5-6; Doc. 74-2; Doc. 93-1 at 4), depends on the credibility of the authors and is not the kind of evidence that "blatantly contradict[s]" or "utterly discredit[s]" Mr. Reed's version of events such that no reasonable jury could believe it. *See Scott*, 550 U.S. at 380-81; *see also Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014) (noting that "officers' testimony about [an] incident is not the type of evidence in the record which 'utterly discredit[s]' [a defendant's] version of the facts" under *Scott*); *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) ("*Scott* does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events.").

[10] To the extent the defendants do mention Mr. Reed's version of events in their arguments, they spin those facts in their favor and ignore contrary inferences that could be drawn. (*See, e.g.*, Doc. 75 at 7-10.) This approach is inconsistent with summary judgment principles that require the Court to draw all inferences in favor of Mr. Reed as the non-moving party. *See Iko*, 535 F.3d at 230 ("Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." (alteration and quotation marks omitted)).

n.2 ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [a prisoner] himself. It is well settled that we may not, at summary judgment, discount viable, material evidence on the ground that it was offered by a plaintiff with a troubled past. . . . [T]his rule is acutely necessary in cases with pro se prisoner plaintiffs, where events take place with only prison guards present, and an inmate has little control of his situation and movement, and few means of establishing facts, other than recounting evidence himself." (internal alterations, citation, and quotation marks omitted)).

The defendants also contend that Mr. Reed's statements to the Polk nurses upon his return indicate that he had no serious medical needs. (*See* Doc. 75 at 10.) As with the defendant's other arguments, this argument ignores Mr. Reed's sworn statements in his affidavits explaining why he did not take advantage of the medical care offered. (*See* Doc. 87-1 at ¶¶ 20-21; Doc. 88-1 at ¶¶ 14-15.) These sworn statements cannot be disregarded merely because Mr. Reed made prior unsworn statements to the Polk nurses. *See Vathekan v. Prince George's Cnty., Md.*, 154 F.3d 173, 180 (4th Cir. 1998) ("[A] sworn statement may not be disregarded for summary judgment purposes merely because it contradicts an earlier unsworn statement." (citing *Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir. 1993)). At most, Mr. Reed's unsworn statements create a question of credibility, which is "for the jury to resolve." *Id.* (citing *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)).

Because the Court is obligated to accept Mr. Reed's version of events as true for purposes of ruling on the defendants' summary judgment motion, and because that

version establishes genuine issues of material fact as to whether the defendants were deliberately indifferent to Mr. Reed's medical needs, the Court will deny the defendants' motion as to this claim. (Doc. 74.) Although a jury may well discredit Mr. Reed's version of events at trial, the Court may not make that determination at the summary judgment stage. *See, e.g.*, *Smith*, 781 F.3d at 106 ("[I]t is the jury's role, not ours, to decide whose version of facts is correct."); *see also Mann*, 578 F. App'x at 275.

The defendants next contend that they are entitled to qualified immunity on this claim. (*See* Doc. 75 at 11-12.) The only argument the defendants assert in support of qualified immunity is that an inmate has no clearly established constitutional right to be decontaminated or medically screened when the inmate refuses such treatment or his combative and aggressive behavior prevents such treatment. (*See* Doc. 75 at 12.)

While this argument may well be true as far as it goes, it does not address the evidence presented by Mr. Reed. (*See generally* Docs. 18, 87-1, 88-1); *see also* discussion *supra*. The defendants make no serious argument that they reasonably thought it was lawful to deny decontamination or medical treatment to a non-violent, compliant inmate who was tased twice, pepper-sprayed in the face, and requested medical help. (*See* Doc. 75 at 11-12.) Any such argument would be futile. *See, e.g.*, *Iko*, 535 F.3d at 241-43; *Williams*, 77 F.3d at 761, 764-68.

The Court is required to accept Mr. Reed's version of events as true when evaluating the qualified immunity defense at summary judgment. *See, e.g.*, *Smith*, 781 F.3d at 106; *Vathekan*, 154 F.3d at 180 ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the

18

actual conduct of the defendants." (citation and quotation marks omitted)); *Rainey*, 973 F.2d at 324-25.  Under Mr. Reed's version of the facts, qualified immunity is inappropriate.

### 3. Liability of Assistant Superintendent Reid

As best the Court can tell, Mr. Reed asserts the same failure to prevent harm and deliberate indifference claims as well as a separate supervisory liability claim against Assistant Superintendent Reid.  (*See* Doc. 18 at 14-15.)

As with his claims against the DOC officers, Mr. Reed has proffered insufficient evidence to support his failure to prevent harm claim against Assistant Superintendent Reid.  He has proffered no direct or circumstantial evidence suggesting that Assistant Superintendent Reid was aware of and disregarded a risk that Sergeant Miller would unjustifiably harm him with Tasers and pepper spray.  *See Farmer*, 511 U.S. at 842-44; *Danser*, 772 F.3d at 347-49.  The Court will grant Assistant Superintendent Reid's motion as to this claim.  (Doc. 74.)

Nor has Mr. Reed proffered sufficient evidence to support his deliberate indifference claim against Assistant Superintendent Reid.  *See Germain*, 570 F. App'x at 325.  In his verified amended complaint and affidavit, Mr. Reed testifies that "[Assistant Superintendent] Reid ordered [the DOC officers] to disregard [his] injuries and/or medical assessment and transport [him] back to Polk."  (Doc. 88-1 at ¶ 13; *see also* Doc. 18 at 13.)  Nothing indicates that this testimony is based on Mr. Reed's personal knowledge.  In the face of Assistant Superintendent Reid's testimony to the contrary, (Doc. 74-4 at ¶ 4), Mr. Reed's testimony is insufficient to show that Assistant

19

Superintendent Reid ordered the DOC officers to disregard Mr. Reed's injuries and transport him back to his prison unit without receiving medical attention.[11] *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge . . . ."); *see also FDIC v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013); *Williams*, 952 F.2d at 823 ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.").

Finally, Mr. Reed contends that Assistant Superintendent Reid is liable based on supervisory liability. (*See* Doc. 18 at 14.) To establish supervisory liability under § 1983, Mr. Reed must show: (1) that Assistant Superintendent Reid "had actual or constructive knowledge that [the DOC officers were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like" Mr. Reed; (2) that his "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link" between his inaction and the injury suffered by Mr. Reed. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

In his verified amended complaint and affidavits, Mr. Reed has not pointed to a single incident, other than the August 2010 incident at issue, that would establish the

_____

[11] Some of the testimony in Mr. Reed's verified amended complaint and affidavit related to Assistant Superintendent Reid is based on Mr. Reed's personal knowledge. For example, he testifies that, before he was driven back to his prison unit, he overheard the DOC officers contact Assistant Superintendent Reid and notify him that force had been used on Mr. Reed. (*See* Doc. 18 at 13; Doc. 88-1 at ¶ 13.) However, Mr. Reed does not testify that he overhead Assistant Superintendent Reid order the DOC officers to disregard his injuries or requests for medical attention, nor has he established any other personal knowledge for his conclusory testimony.

elements of supervisory liability as to Assistant Superintendent Reid. (*See generally*

Docs. 18, 87-1, 88-1); *see also Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206

(4th Cir. 2002) ("[I]n establishing deliberate indifference under *Shaw*'s second prong, a

plaintiff ordinarily cannot satisfy his burden of proof by pointing to a single incident or

isolated incidents . . . ." (internal alterations and quotation marks omitted)). He has

proffered no evidence suggesting that Assistant Superintendent Reid had knowledge of

conduct by the DOC officers that was widespread or that occurred on different occasions,

nor has he proffered any evidence suggesting that Assistant Superintendent Reid failed to

respond to knowledge of such conduct. *See Shaw*, 13 F.3d at 799. The Court will grant

Assistant Superintendent Reid's motion as to this claim. (Doc. 74.)

It is hereby **ORDERED** that:

1. The Scotland County defendants' motion for summary judgment, (Doc.
   59), is **GRANTED**, and all of Mr. Reed's claims against these defendants
   are dismissed without prejudice;

2. On its own motion, the Court dismisses without prejudice all claims against
   DOC defendants Evans and Carter due to lack of service;

3. The moving DOC defendants' motion for summary judgment, (Doc. 74), is
   **GRANTED in part and DENIED in part**:

   a. All claims against Assistant Superintendent Reid are dismissed with
   prejudice;

b. Mr. Reed's failure to prevent harm claims against Officer Thrower and Correctional Case Manager Totten are dismissed with prejudice; and

c. Mr. Reed's deliberate indifference claims against Officer Thrower and Correctional Case Manager Totten may proceed to trial.

**SO ORDERED**, this the 21st day of July, 2015.

_____
UNITED STATES DISTRICT JUDGE